In re T-Shack Incorporated, Michael J. Harker appearing for appellant. Natalie L. Winslow appearing for appellate. Good morning, Mr. Harker. Would you like to reserve any time? Yes, five minutes, please. All right. Thank you. Good morning. My name is Michael Harker. I am counsel for the appellant, T-Shack Inc. May it please the court, as I'm sure your honors are aware, this appeal challenges specifically a retroactive stay annulment that validated post-petition foreclosure sales and extinguished remedies for an alleged stay violation. The court in this matter, the Honorable Judge Nakagawa, treated the issue of one of standing. I'm sure the court has reviewed the record and found that the court found that because the case had been converted from a Chapter 11 to a Chapter 7, that only the Chapter 7 trustee had the standing to oppose the renewed motion to annul the automatic stay. It was renewed because, as I'm sure this court is aware, the motion had been filed originally along with a motion to set aside the sales and sanctions in the Chapter 11, which ultimately the judge denied without prejudice as to both motions. At the time the case was converted, tell me what the injury in fact is that your client, the debtor, suffers following conversion of the case. What's their interest? What's their dog in the fight, if you will? Certainly, Your Honor. Well, first and foremost, I would argue that the first dog in the fight would be the motion to have those sales set aside. Those sales occurred post-petition after the Chapter 11 bankruptcy was filed. I would argue that although the case was converted to a Chapter 7, my client, Taoiseach King, still had the dog in the fight as to the ability to set aside the foreclosure sales on the properties. Why? Because the properties are property of the estate, which is now subject to the domain and determination of the Chapter 7 trustee. What happens to the property is going to be determined by the Chapter 7 trustee, not your client. Understood, Your Honor. And I would note, although recently happened, that those properties were abandoned, but I know that has occurred after this issue. Notwithstanding, it's still my client. Did the court enter an order on the abandonment motion? It's circulating right now, Your Honor. The hearing was held May 28th. I was out for a little bit, but they have been uploaded. But no, it's not entered yet. Sorry to interrupt you. No, that's fine, Your Honor. I was hoping they would be entered before today, to be frank with you. I had another question. Yes, certainly. And that is, there was more than one form of relief sought by the creditor, by Shell Point. There was more than one form of relief. They sought relief under D-1, which is the annulment of the estate. They also sought relief under 362 D-4. D-4 relief would necessarily only or only damage the debtor going forward, whether the case was converted or not converted. Wouldn't it, at the time the motion was filed? In other words, at the time they filed the motion, the relief they sought, whether there was a trustee or not, would – if they weren't successful on annulling the stay, then if they were successful on D-4, that would be something the debtor would care about, not the trustee would care about. That is correct, Your Honor. So you had standing from the moment the motion was filed because the relief that they sought was beyond just annulling the stay. I appreciate that, Your Honor, and it's probably something I should have thought a little bit more, but that is correct, yes. And that was obviously my position from the entirety was that we did have standing. Obviously, as Your Honor notes, under 11 U.S.C. 362 D-4, but once again, as to the motion for sanctions, I still would argue that the sale occurred after the bankruptcy was filed. And although it was converted and arguably a Chapter 7 trustee does administer the estate, my client is still an aggrieved party. How is your client aggrieved? Is there any showing of equity in this property? Well, that's a factual determination, Your Honor. Was it raised at all? I believe it was. The adversary action that had been filed by my client, which is one of the actions that we had, you know, were stayed, so to speak, when the case got converted to a Chapter 7, specifically sets forth that we believe that Shell Point in this matter had grossly overstated their interests. The principal amount, the payments were made, and I understand that had been addressed. Well, in some sense, for fairness to your client.  They can challenge that in the foreclosure proceeding too, right? They could have. That's correct. Did they? Well, as Your Honor is aware, we had filed a previous Chapter 11 bankruptcy, which had gone on for approximately two and a half years that had gotten dismissed. In the interim, we had prepared a new one. But to answer your question, it was not filed because they had set a sale so fast on these properties. We didn't have time to go in and attempt to get an injunction in state court, which is what I was hopefully attempting to do. We have subsequently filed a complaint once the stays were lifted. And, of course, that was removed. But that order, which we're also waiting for, was to remand that case back to state court as well. The two grounds that Judge Gann was talking about, I think it was D2 and D4. I don't have the code in front of me right now. The D2, wasn't there a sufficient record to annul the stay? Tell me why you don't think that the judge was correct in just annulling the stay. Well, we clearly believe there wasn't a sufficient record to annul the automatic stay. In fact, in the transcript, Your Honor, the judge, through the entire proceeding, discusses the standing of the debtor. And then at the end, and I even had written down the page number. At the end of the transcript states, there appears to be sufficient in re fested. Hopefully I'll say that. I apologize. I've been asking people exactly how to say that. Elements that were supported, but nowhere were those ever addressed by the court. The entire proceeding dealt with basically the lack of an opposition because my client did not have standing. So I would argue that no, the record does not show at all that the elements necessary, which is a high standard to annul an automatic stay, were ever discussed or met. Well, they certainly discussed it in their motion. They did. They discussed it in the motion. And they put in the record. You put in the dispute about whether or not they had notice. They put in whether or not there was going to be injury or prejudice to them or where it was inequitable not to. So those issues were before the court. They were. They were before the court. And I address those. Those that says that there's no mechanistic application of the statute, that the focus is on the two areas that I just discussed. But those are not dispositive. The courts employ many factors, and it lists the all the rest of the factors and emphasize that there are merely a framework for analysis and not a scorecard. And then in any given case, one factor may be dispositive. Right. So in this instance, if the court made this. So the standard review then in this case would be the conclusion. The bankruptcy courts reach would be an abuse of discretion. Right. Yes. Which means that he had to either not identify the correct legal standard or his conclusions has to be implausible, improbable or not supported by evidence in the record. Correct. He identified that as the proper standard. There was certainly evidence in the record to support all of his conclusion. That is that they favored lifting or annulling the stay.  That's what we're assuming, Your Honor. Well, it was in the record, right? Because you put in evidence and the show plane put in evidence. We did put in evidence, Your Honor. But when I say we're assuming it's because those were not addressed ultimately at the hearing. No, he didn't go through the factors and identify each one. That is correct. But he did conclude at the end that they favored the fell set factors favored granting annulment of the state in one sentence. Yes, he did say that without discussing any of those factors. Wouldn't it since it's their burden to prove that fell statute apply and it's not your burden. But once the court reaches that conclusion, then on appeal, if you want to overturn that conclusion, don't you have to establish that? None of the factors were applicable and that none of the factors there was any evidence to support any of them because only one factor could be dispositive. One factor could be dispositive. But I believe in the case uses a weighing analysis. So even though maybe one would lean toward them. And, of course, I could argue, for example, the fact that there was two bankruptcies isn't sufficient. The fact that it could also be argued that two bankruptcies was evidence of an equitable contract. It could. But ultimately, it wasn't discussed at the hearing, although it was in the record. And we're once again assuming what the honorable judge not to go would have ultimately decided. It's then I heard the clock off, but just to finish my sentence and I'll sit down. The position is that he should have made that analysis to allow. First of all, to allow my opposition and then make the analysis. And then perhaps we'd be on appeal on those issues if we had lost. But that analysis was never done. Thank you. Thank you. All right. Good morning, your honors. Natalie Winslow for New Rez LLC doing business at Shell Point. The bankruptcy court's order should be affirmed for two reasons. First, the debtor failed to establish standing under the person agreed test. And second, even that's only with regard to the standing on the annulment of the stay issue, as you described it. But it doesn't apply with 362 D4 analysis, does it? That's correct, your honor. But the court's order, the court found that annulment was proper. So but it also found and granted you the relief under D4 in the same order. That's correct, your honor. Can you have standing for one issue but not the other? I think so, your honor. I think that the debtor could not oppose annulment under on the same order, though. It isn't the same. And it's under the same motion for relief that you file. That's correct, your honor. But it's it was an alternative request. The initial and primary request was for annulment of the automatic stay. And the the case law is clear that. And then in the alternative, if the court didn't grant the annulment, it was to grant the D4 relief. But then he granted D4 relief and D1 relief to you. How could that be? It's not possible, is it really? It's not possible to grant both, your honor. I mean, if you if this panel affirms the decision and doesn't address the standing question, but addresses the felstat factors and says that you made the record, the court made the finding, then the D1 relief becomes the D4 relief becomes moot, doesn't it? I think that's right, your honor. I think that's right, your honor. I'm really interested in you going through how the court dealt with the felstat factors. Sure, your honor. As your honors know, the primary focus of the argument was on the standing issue. And the court waited until the end of the hearing to actually discuss the merits of the felstat factors. But what the court did at the end of the hearing was it said. Actually, I have the quote from the transcript. I have the transcript, your honor. The court said the court said at. Excerpts of record 1720, it said that it had analyzed the felstat factors and that they weighed in favor of new res. And one of the things that the court found significant when making that ruling was that there was no benefit that would befall the debtor in granting annulment. And that is a point, actually, that the debtor conceded at the hearing was that no benefit would in order to the debtor. The court specifically asked that question. And the debtors council said, no, that's also in the record at 1717 to 1718. That is one of the factors is the 11th factor for field stat. And what the what this court has said before, in cases like Henry Merriman in in Ray Cruz, is that the felstat factors are not a mechanical scorecard. Any one factor may be dispositive. And keep in mind, as this court knows, the standard of review is abuse of discretion. And so you're looking at whether the court made a legal error or a factual finding that was clearly erroneous. And I'll point out that in the debtor's briefing, it doesn't identify either a clear error. There's not the felstat factors. There are are what the court should have analyzed this issue under. Nor does the debtor identify any clearly erroneous factual finding. It can't because the one the debtor conceded again at the hearing that that no benefit would befall the debtor. And the court found that significant in granting in granting relief. This court has said in in Ray in Ray Cruz that not only may any one factor be dispositive, but if there is any support in the record, the bankruptcy appellate panel has looked at the entire record to find that the bankruptcy court did not abuse its discretion. And we went through what the debtor tries to do in its briefing here is ask this court to reweigh the equities. And that is something that is not appropriate for appellate review in this circumstance. But that being said, we went through in painstaking detail, both in our motion to the bankruptcy court and in our briefing to this court, to show why the field set factors overwhelmingly weigh in favor of new res. And I can go through those if you're under what wants. I can continue to talk about that. The court appropriately identified field set at the end of the hearing. But if we want to go through the factors, the record reflects a pattern of filings by the debtor that were designed to stop foreclosure. This is the debtor's second bankruptcy filing. The first bank. So let's just clarify this one question I have, which is that from the time they bought the H.O.A. lien and became the title owner of the property through today or through the appointment of the chapter seven trustee, did they ever make a payment to show point there were payments made in the first bankruptcy as adequate protection payments? That is true. But other than in the first bankruptcy, since they purchased the property, I believe in 2013 around there for all three properties, no payments have been made. So from 2013 through 2022, that's correct. Under no payments there and there were only adequate protection payments made at the order of the court during the course of the original 11. And then there were no further payments made after the case was converted. That's right. Well, there were no there were no further payments made once the first bankruptcy was dismissed, nor were there payments made up until the second bankruptcy was filed. I think maybe a month later, before the first bankruptcy was administratively closed, right before New Rez's foreclosures, no payments were made, which is why New Rez renoticed and republished the foreclosure sales. And then no payments made at all during the second bankruptcy case, which is which is still open. Now, I assume you're saying that that's one of the factors the court should consider. Absolutely, Your Honor. I have another question for you. The stay was annulled and there was no there was no stay of that order. What happened to the properties? That's a great question, Your Honor. I actually checked yesterday to see where we were in the foreclosure process to the properties. Well, two of the properties had that all three properties had foreclosed as of the as of the date the second bankruptcy was filed. Two reverted to the loan owner, Fannie Mae. One was sold to a third party. My client thought it was the smartest idea to unwind the sale to the third party because it didn't know how this issue would ultimately unfold and be decided. So once that happened and the stay was annulled, the foreclosure process had to be restarted for that foreclosure. So where we are with that one today is that the foreclosure is scheduled to occur next week, I believe, next Thursday, a week from today. With respect to the other two properties that reverted to Fannie Mae, once New Rez became aware of the bankruptcy filing, it did it did nothing else with with the foreclosure. So a trustee's deed was never recorded against the property. However, the properties were not unwound. At that time, we were we sought relief from the court to see what to do. Once the court annulled the stay, the trustees deeds were recorded. I checked yesterday to see if they had now been sold to a third party. They have not. OK. All right. Thank you. And then I have another question is, are we even talking about the D4 relief on this appeal? I'm sorry. Are we even talking about the relief granted under D4 on this appeal? That is not an issue that was raised by the debtor in its briefing. The only thing that was raised by the debtor in its briefing is, as I stated, the annulment and the reweighing of the field setback. There's not the whether there was a clearly. Is it waived? I do think it is waived. By the time you filed the original motion, you were not clear that the debtor was out of possession title out of title to the property, even though you had conducted a sale. You didn't have because it was post petition. You didn't have any authority to do anything. So the debtor was clearly at that point an interested party on the original motion. The court didn't deny the original motion until after it converted the case. Right. So it converted the case and then it denied your motion. Then you renewed the motion after this chapter seven trustee was appointed. Right. But even at the time the chapter seven trustee was appointed, title still remained in the debtor. The D4 relief and the D1 relief were to make sure that you either had the right to take title, convey the property or do something. And the debtor was still a party to that until such, even though the trustee had the right to control the disposition of the asset and any any money you needed to get the debtor out of title and get yourself in title in order for that to be final for your client to have the ability to do something with it post annulment. Well, I would quibble just a little bit with that, your honor, in that with the two properties that reverted to Fannie Mae, the properties had gone forward and. But until the court ruled, you didn't have the debtor was still entitled to the property was still in their legal title. I'm sorry. Are you saying entitled? Entitled. OK. Entitled. Entitled. Entitled. It was titled in his name. It didn't wasn't necessarily mean it was property. The estate at that point under 541, if you only had bare legal title and no equitable interest, but title needed to be changed for your client to benefit. The debtor was in title in the chain of title was still titled in his name until you got the order from the court that said you can annul the stay and the sales are validated. You didn't have that ability, did you? I would say that the debtor was record title holder as of that time. I would agree with that, your honor. Yes. And you didn't at the time that you're making the argument to the court, you didn't tell the judge, for instance, hey, if you grant this relief to us to annul the stay, you should not grant the D4 relief because it won't be necessary. It would be mooted by virtue of your granting this other relief because he ended up with an order with both. And he repeated it again in another subsequent order that he entered afterwards on your sanctions motion. And he's continued the sanctions issue that arise out of the D4 relief. Right. Yes, your honor. To answer to your initial question, we did not tell the court at the hearing or in the briefing. That is correct, your honor. And you concede today that they certainly had standing to oppose the relief that you requested under D4. I do. But again, your honor, I don't think that that is actually before the court. Well, it is because his order is before us. We still have to deal with the fact that there is an order that says you got MRM relief with D1 relief and you got D4 relief in the same order. We we can ignore it because they didn't appeal it. We can say that it's moot by virtue of us affirming. But if we don't affirm. What do we do with an order that says that they have D4 relief? I understand your point, your honor, and I do agree with you that the order is what the order is and we have to live with what it with what it says. However, I do think it is significant, your honor, that that is not the issue that the debtor is appealing here today. The the issue is the weighing of the the reweighing of the field set factors. I agree that that that there's a simpler path to reality, which is the felt set factors favored your client and you put it and you put that evidence in the record. That's right, your honor. But I appreciate the discourse. I am not certain how much time I have left, but I'm happy to answer any questions that you may have. I have no idea how much time you have. Two minutes, your honor. Thank you. I have nothing else for you, unless you have questions for me. Thank you. Thank you for the back and forth. Thank you. Thank you, your honors. Council continuously stated, well, a few times that I am attempting to get this court to reweigh the in Ray fell states elements. That's not the issue here. They were never addressed. I understand they're in the briefing. I agree with that, but they were never addressed at the hearing because I was not given that opportunity and it wasn't addressed in the ruling as well. But it was in the transcript and he did mention it and he did state that he considered and weighed them and thought they favored granting annulling the state. What he said, your honor, it is on page 1720. That appears that all of the requirements to annul the state as articulated infested. Sorry, fell stead case, amongst others seem to have been met in this instance, and notwithstanding the desire of the debtor to continue to press arguments that they no longer have standing to do to present. And then the court includes. That's exactly what the court said. He states. It seems to have been, but they were not analyzed, your honor, because the court ultimately had stated we didn't have standing. And therefore, that that's so we're not attempting to reweigh anything. They weren't discussed. That's the entire discourse on that case. I'll say that case because I continue to say it incorrectly, which I apologize. But and then so we're not requesting that the court reweigh it. We're requesting that the lower court weigh it and give analysis as to why ultimately he would rule for or against us. So you think it's an abusive discretion standard and because he didn't make the findings, we can't make that determination. So we should send it back for him to judge Nakagawa to weigh it. That is exactly what I'm saying, your honor. And that just is to to have them to have us undo the annulment and require him so that you're back in in a situation where you have delay and a potential to get the properties. That's accurate. Well, yes, we would like the properties. Obviously, I don't think there's any dispute and nor are we trying to. I'm frustrated by that possibility because the judge, the trial, the bankruptcy judge knew of the multiple bankruptcies. He knew about the issues of equity. He knew about the payments that were not made. That's all in the record. And so his conclusion, even though it was started with the word seems. Seems to me to be appropriate. I understand. You also understand that we can affirm on any basis supported by the record. I understand. Certainly. And I appreciate that, your honor. Relating to the payments, my client did make adequate protection payments in the first bankruptcy. And also, as noted on the record, had paid the taxes on the property, had paid all the HOA dues on the property, had kept up the properties. This isn't one of these scenarios, which I'm sure your honors have seen, especially during the downfall of the market where somebody was just trying to have 10 years worth of free living. My client wanted to keep these properties. So it was up keeping them. So I know he took money in every month from the rentals to the extent that there were properties were rented and he paid money over every month to the lien holder. Well, not not to the lien holder. Not at all. Not at all. Well, in the bankruptcy. Yeah. But only because they required it as a condition of your being able to continue. That's correct. Not voluntarily. Never made a payment. He would have loved to, your honor. And I know you don't have settlement discussions in front of you or anything else, but no, there weren't any direct payments. I believe on one of the properties there was a tender, but they wouldn't accept it. But I don't believe that's in the record. So so once again, your honors, I do believe the court did abuse its discretion. And although your honor brought up the good point between D1 and D4, and I don't believe that's been waived. I understand. I didn't argue that in my brief, but ultimately we had standing and the court found we didn't have standing. And I believe that was an abuse of discretion. And then once again, although in the transcript, we my client would argue, your honor, that we're we're assuming what the honorable court would have ruled. But ultimately the ruling was just on standing. So I would request your honors that you remand this. Find that it was an abuse of discretion, finding that my client did not have standing and set it back for further proceeding. And that's it. Thank you very much. Thank you. The argument is submitted. Thank you. Thank you.
judges: Brand, Gan, and Corbit